870 F.2d 1090
 UNITED STATES of America, Plaintiff-Appellant,
v.
Jude G. DEL PERCIO; Indiana and Michigan Electric Company,
a corporation and American Electric Power Service
Corporation, a corporation, Defendants-Appellees.
 No. 87-1396.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 7, 1987.
Decided March 22, 1989.
Rehearing Denied July 21, 1989.
 
 John A. Smietanka (argued), U.S. Atty., Grand Rapids, Mich., Paula A. Wolff, Richard S. Shine, Stanley A. Rothstein, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.
 Larry C. Willey, Grand Rapids, Mich., for Del Percio.
 Dennis C. Kolenda, Grand Rapids, Mich., for Michigan Elec. Co., and American Elec. Power Service Corp.
 J. Patrick Hickey (argued), Gerald Charnoff, Thomas C. Hill, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for Hickey and Charnoff.
 Before JONES and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 On September 10, 1987, the government filed a nine-count indictment against defendants-appellees Jude G. Del Percio ("Del Percio"), Indiana and Michigan Electric Company ("IMEC"), and American Electric Power Service Corporation ("AEPSC"). The indictment charged that the defendants violated 18 U.S.C. Sec. 1001 (1982), and certain provisions of the Atomic Energy Act, 42 U.S.C. Secs. 2131, 2272 and 2273(a) (1982), in connection with their failure to comply with certain fire safety regulations issued by the Nuclear Regulatory Commission ("NRC"). The district court dismissed all nine counts of the indictment as barred by the five-year statute of limitations contained in 18 U.S.C. Sec. 3282 (1982), 657 F.Supp. 849. For the reasons set forth below, we affirm the dismissal of eight of the nine counts, reverse as to the remaining count, and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 In November of 1980, the NRC revised certain of its regulations dealing with fire protection standards at nuclear power facilities. The new regulations provided more strict safeguards against the loss of equipment necessary to maintain control over the nuclear reactor in the event of a fire. In addition to providing new fire protection standards, 10 C.F.R. Pt. 50 App.R, (1981) ("Appendix R"), the regulations mandated their implementation in accordance with a prescribed schedule. 10 C.F.R. Sec. 50.48 (1981). The regulations became effective February 17, 1981 and required that covered nuclear facilities submit to the NRC by March 19, 1981 plans and schedules for making the necessary plant modifications.
 
 
 3
 Since 1974, defendant-appellee IMEC has been licensed by the NRC to operate the two-unit Donald C. Cook nuclear power plant which is located in Bridgman, Michigan. At all times relevant to this case, defendant-appellee AEPSC provided technical and licensing support to IMEC, and defendant-appellee Del Percio was an engineer in AEPSC's Nuclear Safety and Licensing Section. Within AEPSC, Del Percio was assigned responsibility for preparing IMEC's plans and schedules for achieving compliance with Appendix R at the Cook facility. In March of 1986, after reviewing the matter, Del Percio prepared a letter and technical attachment which stated that no modifications were required at the Cook facility because the facility already was in compliance with Appendix R. The materials prepared by Del Percio were sent to the NRC on March 27, 1981.
 
 
 4
 In April of 1982, after seeking additional information from IMEC and AEPSC concerning safety standards at the Cook facility, NRC officials inspected the facility and found that it was not in compliance with Appendix R. Though allowing IMEC to continue to operate the facility under certain interim procedures pending compliance with Appendix R, the NRC later referred the matter to the Department of Justice for criminal investigation.
 
 
 5
 By the middle of 1984, a federal grand jury for the Western District of Michigan had begun hearing testimony regarding possible federal charges against IMEC, AEPSC and various individuals, including Del Percio. In March of 1986, with no indictment having been returned, the United States Attorney began to fear that the limitations period might expire with respect to certain charges he planned to bring against the targets of the investigation. The government therefore requested the individual and corporate targets to execute waivers extending the limitations period on certain charges for 90 days. Believing that further inquiry would result in no criminal charges being brought against them, the targets, upon advice of counsel, signed waivers extending the limitations period on any charges brought pursuant to 18 U.S.C. Secs. 371 (conspiracy) and 1001 (false statements) until June 24, 1986.
 
 
 6
 During the initial 90-day extension period, the government conducted further interviews and decided not to prosecute five of the eight individual targets. However, as the new deadline approached, the government determined that it needed still more time for its investigation. The government therefore sought and obtained from the remaining targets a second set of waivers extending the limitations period on any conspiracy and false statements charges for an additional 90 days.
 
 
 7
 In mid-August of 1986, the government notified defense counsel that two more of the individuals under investigation would not be prosecuted, thus leaving Del Percio, IMEC and AEPSC as the only remaining targets. Although the defendants executed a third set of waivers extending the limitations period on the relevant charges until October 3, 1986, the government decided to proceed with the prosecution against them. On September 10, 1986, the grand jury returned the instant nine-count indictment.
 
 
 8
 Count One of the indictment charges the defendants with violating 18 U.S.C. Sec. 1001 based upon their submission to the NRC of the March 1981 letter in which it was falsely claimed that the Cook facility was in compliance with Appendix R. Counts Two, Three, Six and Seven charge violations of 42 U.S.C. Secs. 2131 and 2272 based upon defendants' failure to operate each of the Cook facility units in accordance with their NRC license conditions. Specifically, Counts Two and Three allege that defendants did not submit plans and schedules for compliance with Appendix R, thereby violating the statutory requirement that licensed plants comply with all NRC regulations. Similarly, Counts Six and Seven allege a violation of this same statutory requirement based upon defendants' failure to make the modifications necessary to bring the Cook facility into compliance with the regulations. Finally, Counts Four, Five, Eight, and Nine charge violations of 42 U.S.C. Sec. 2273(a) based upon defendants' failure to submit plans and schedules to the NRC and to make plant modifications, as required by Appendix R.
 
 
 9
 The district court, on March 20, 1987, dismissed all nine counts of the indictment as barred by the five-year statute of limitations applicable to non-capital federal offenses. As to Count One, the false statement charge, the court relied upon Benes v. United States, 276 F.2d 99 (6th Cir.1960), in holding that the statute of limitations was a non-waivable bar to the defendants' prosecution. Because the alleged false statements were made on March 27, 1981, more than five years prior to the time the indictment was returned, the court ruled that Count One was time barred. As to the remaining eight counts, the court rejected the government's argument that those counts properly alleged continuing violations of the relevant statutory provisions from March 19, 1981 until April 30, 1982. In the court's view, the offenses charged in Counts Two through Nine were completed, and the statute of limitations began to run, on March 19, 1981 when the Appendix R submissions were due to be filed. The court therefore ruled that the prosecution as to these counts was also time-barred under 18 U.S.C. Sec. 3282.
 
 
 10
 In this appeal, the government challenges the district court's dismissal of each of the nine counts of the indictment.
 
 II.
 
 11
 The first issue that we address involves Count One, the false statement count, and whether the waivers executed by the defendants with respect to that count were effective to extend the five-year limitations period. As noted earlier, the district court relied upon our decision in Benes v. United States, 276 F.2d 99 (6th Cir.1960), in concluding that the waivers were not effective. We find Benes to be distinguishable from the instant case and therefore reverse the dismissal of Count One of the indictment.
 
 
 12
 In Benes, the defendant was charged with tax evasion. Prior to being indicted, however, the defendant filed a civil action in federal court seeking to restrain the government from presenting certain evidence to the grand jury. After the district court entered, then dissolved, an order restraining the government from presenting the challenged evidence, the parties agreed that the government would not present the evidence to the grand jury until this court had disposed of defendant's appeal. 276 F.2d at 108. When this court affirmed the district court's ruling, Benes v. Canary, 224 F.2d 470 (6th Cir.1955), the government presented the relevant evidence to the grand jury. The defendant subsequently was indicted and convicted for tax evasion.
 
 
 13
 On appeal, Benes argued that the five-year statute of limitations barred his prosecution with respect to certain counts of the indictment. The government, however, asserted that the limitations period was tolled while the civil appeal was pending, and that defendant's prosecution as to these counts was therefore not time-barred. We rejected the government's argument and concluded that the statute was not tolled on account of the parties' agreement to delay presentation of the evidence pending appeal. We stated:
 
 
 14
 [T]he general rule is ... that an indictment, found after the expiration of the time for beginning prosecution, is barred by the statute of limitations and is not waived by the fact that the prosecution was withheld on account of an agreement with the accused, or by the fact that the accused procured continuances of the preliminary hearing from time to time until the period of limitation had expired.
 
 
 15
 276 F.2d at 109 (citations omitted and emphasis added).
 
 
 16
 The district court in this case relied upon the above-emphasized language in holding that the waivers executed by the defendants were without legal force. However, the parties in Benes did not explicitly agree to extend the limitations period. In this case, by contrast, the parties agreed in writing to extend the statute of limitations on specified charges for definite time periods. Given that the parties' agreements in this case expressly addressed the effect that the waivers would have on the statute of limitations, we find Benes to be factually and legally distinguishable.
 
 
 17
 In determining whether the waivers in this case were effective to extend the limitations period on Count One, we first note that every circuit court of appeals to address the issue has held that criminal statutes of limitations are waivable affirmative defenses that do not affect the subject matter jurisdiction of the courts. See, e.g., United States v. Karlin, 785 F.2d 90, 92-93 (3rd Cir.1986); United States v. Meeker, 701 F.2d 685, 687 (7th Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); United States v. Walsh, 700 F.2d 846, 855 (2nd Cir.), cert. denied, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); United States v. Williams, 684 F.2d 296, 299 (4th Cir.1982), cert. denied, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 961 (1983); United States v. Wild, 551 F.2d 418, 424-25 (D.C.Cir.), cert. denied, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977). While the Tenth Circuit appeared to have taken a different stance in Waters v. United States, 328 F.2d 739, 743 (10th Cir.1964), the court apparently re-evaluated that position in United States v. Gallup, 812 F.2d 1271, 1280 (10th Cir.1987) ("It is well settled that the statute of limitations is an affirmative defense which is waived unless raised at trial"). Thus, given the narrow scope of our decision in Benes and the Tenth Circuit's recent holding in Gallup, none of the courts of appeals has taken the position urged by the defendants in this case.
 
 
 18
 The defendants argue that there are a number of policy reasons supporting a rule prohibiting voluntary waivers of statutes of limitations. First, they contend that such a rule would encourage the prompt investigation and prosecution of criminal charges. In addition, they argue that such a rule would enhance predictability and reduce anxiety among potential defendants. We find these arguments unpersuasive in the instant case because the defendants voluntarily and intelligently extended the limitations period beyond its stated term. The waivers in this case were executed in part to give defense counsel more time to convince the government not to prosecute the targets of the investigation, and this strategy led ultimately to the exoneration of all but one of the individual targets. In this vein, we find the following observations of the District of Columbia Circuit appropriate:
 
 
 19
 If a defendant may waive certain constitutional rights, he should certainly be capable of waiving a statutory right such as the statute of limitations. Constitutional rights which the defendant may waive include, inter alia, the right to be represented by counsel, the right not to be twice put in jeopardy, and the right to be tried in the district where the offense was committed. If the strong policies behind these rights are not violated by a rule permitting them to be waived ..., we cannot find that the limitation statute's policy is violated here where the defendant was fully cognizant of the consequences of such a waiver and decided to execute it on the advice of his attorney for his own benefit.
 
 
 20
 United States v. Wild, 551 F.2d 418, 424-25 (D.C.Cir.1977) (footnotes omitted).
 
 
 21
 We conclude that the district court erred in holding that Count One of the indictment was barred by the statute of limitations. Since defendants' written waivers extended the statute of limitations until October 3, 1986 and since the indictment was returned prior to that date, Count One of the indictment is not time-barred.
 
 III.
 
 22
 The next issue we address is whether the offenses charged in Counts Two through Nine of the indictment constitute "continuing offenses" for limitations purposes. The government argues that the indictment properly alleges that the offenses charged in Counts Two through Nine continued from March 19, 1981 (when the Appendix R submission was due) until April 30, 1982 (when the NRC allowed IMEC to operate the Cook facility under interim guidelines). Thus, asserting that the offenses charged were not complete until April of 1982, the government contends that the indictment as to these counts was returned well within the five-year limitations period in September of 1986. As noted earlier, the district court rejected the government's argument and held that the statute of limitations on Counts Two through Nine began to run on March 19, 1981.
 
 
 23
 Our analysis of this issue begins with the Supreme Court's decision in Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). In Toussie, the Court addressed the question of when the statute of limitations began to run on the crime of failing to register for the draft. The applicable statute provided that "it shall be the duty of every male citizen ... who ... is between the ages of eighteen and twenty-six, to present himself for ... [draft] registration ... in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder." 397 U.S. at 113, 90 S.Ct. at 859. The relevant presidential proclamation stated that "[p]ersons who were born on or after September 19, 1930, shall be registered on the day they attain [their eighteenth birthday], or within five days thereafter." Id. (footnote omitted). Under these provisions, Toussie was required to register for the draft between June 23 and 28, 1959. Because he did not register during that time or at any time thereafter, he was indicted on May 3, 1967.
 
 
 24
 Toussie challenged the indictment, arguing his crime was complete when he failed to register for the draft in 1959, and that his prosecution therefore was barred by the five-year limitations period for non-capital federal offenses. While agreeing that Toussie's crime was complete in 1959, the government contended that the offense continued to be committed each day that Toussie failed to register until he turned twenty-six years old.
 
 
 25
 The Supreme Court rejected the government's position and ruled that the limitations period began to run five days after Toussie's eighteenth birthday. In reaching this conclusion, the Court first noted that:
 
 
 26
 The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,'...."
 
 
 27
 397 U.S. at 114-15, 90 S.Ct. at 859-60 (quoting United States v. Scharton, 285 U.S. 518, 522, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932)). After noting the tension between the purposes of the statute of limitations and the continuing offense doctrine, the Court then stated that:
 
 
 28
 These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.
 
 
 29
 Id. 397 U.S. at 115, 90 S.Ct. at 860. Applying this test, the Court found that neither the explicit language of the draft registration statute nor the nature of the crime charged compelled the conclusion that Congress intended that offense to be treated as continuing for limitations purposes. The Court therefore ruled that Toussie's indictment was barred by the five-year statute of limitations.
 
 
 30
 Since the parties in this case agree that Toussie provides the applicable test for determining whether the crimes charged in Counts Two through Nine constitute continuing offenses, our task is to determine whether (1) the explicit language of the relevant statutes compels this conclusion or (2) the nature of the offenses charged is such that Congress must assuredly have intended that they be treated as continuing ones.
 
 A. Explicit Language of the Statutes
 
 31
 As noted earlier, Counts Two through Nine charge the defendants with violating 42 U.S.C. Secs. 2131, 2272 and 2273(a) by failing to submit plans and schedules for making the plant modifications required by Appendix R, and by failing to implement those modifications in accordance with the prescribed timetable. Although the alleged violations of the NRC regulations are critical to an understanding of the charges against the defendants, our search for explicit continuing offense language is limited to the statutes under which the defendants are charged. Under Toussie, we may not construe these offenses as continuing ones "unless the statute itself, apart from the regulation[s] justifies that conclusion." 397 U.S. at 121, 90 S.Ct. at 863.
 
 
 32
 Section 2131 states in pertinent part that:
 
 
 33
 It shall be unlawful ... for any person within the United States to transfer or receive in interstate commerce, manufacture, produce, transfer, acquire, possess, use, import, or export any utilization or production facility except under and in accordance with a license issued by the [NRC]....
 
 
 34
 Section 2272, a criminal penalty provision, states that:
 
 
 35
 Whoever willfully violates, attempts to violate, or conspires to violate ... Section ... 2131 of this title ... shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both....
 
 
 36
 Finally, section 2273(a), also a criminal penalty provision, states that:
 
 
 37
 Whoever willfully violates, attempts to violate, or conspires to violate, any provision of this chapter for which no criminal penalty is specifically provided or of any regulation or order prescribed or issued [by the NRC] ... shall, upon conviction thereof, be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both....
 
 
 38
 We find no explicit language in these statutory provisions which compels the conclusion that the crimes described or referenced therein are continuing offenses for limitations purposes. None of these provisions even mentions the statute of limitations, much less when the limitations period begins to run. By contrast, as the district court noted, Congress has provided in 18 U.S.C. Sec. 3284 (1982), that concealment of a bankrupt's assets "shall be deemed to be a continuing offense ... and the period of limitations shall not begin to run until such final discharge or denial of discharge." Similarly, the Foreign Agents Registration Act, 22 U.S.C. Sec. 618(e) (1982), provides that "[f]ailure to file any such [foreign] registration statement or supplements thereto as is required by [this title] shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary." Since Congress has not included such explicit continuing offense language in the statutory provisions under which the defendants are charged, we conclude that the first prong of the Toussie test is not satisfied.
 
 B. Nature of the Offenses Charged
 
 39
 With regard to the nature of the crimes charged in Counts Two through Nine, the government makes two arguments. First, the government contends that the Congressional concern about the safety of nuclear power plants which is reflected in the Atomic Energy Act demands that violations of the Act be treated as continuing offenses for limitations purposes. Second, the government argues that since the defendants are charged with "possessing and using" a nuclear power facility in violation of NRC license conditions, and since "possession and use" imply a continuing course of conduct, Congress must have intended that the offenses charged be construed as continuing ones. We do not find either of these arguments persuasive.
 
 
 40
 While the Atomic Energy Act undoubtedly reflects a serious Congressional concern about the safety of nuclear power facilities, this fact alone is insufficient to justify construing violations of the Act as continuing offenses. In Toussie, after concluding that defendant's failure to register for the draft did not constitute a continuing offense, the Supreme Court made these pertinent remarks:
 
 
 41
 It should be emphasized that this conclusion does not mean that the gravity of this offense is in any way diminished. Failure to register is subject to heavy criminal penalties. The only question is whether those penalties must result from a prosecution begun within five years or whether they can be delayed for a longer period.
 
 
 42
 397 U.S. at 123, 90 S.Ct. at 864. We do not believe that the Toussie doctrine permits us to construe offenses as continuing ones based upon our perception of the seriousness of the crimes charged. If Congress had deemed it desirable to prescribe a longer statute of limitations for violations of the Atomic Energy Act, it could easily have done so. We decline the government's invitation to exercise this legislative function.
 
 
 43
 The government next argues that the "possessory" nature of the crimes charged mandates that they be treated as continuing offenses. In support of this argument, the government relies upon the fact that section 2131, which provides the statutory basis for four counts in the indictment, proscribes the "possession and use" of a nuclear facility in violation of NRC license conditions. The government contends that "possession and use" imply a continuing course of conduct, and that the charged offenses therefore must be construed as continuing crimes for limitations purposes.
 
 
 44
 In evaluating this argument, we first note that the government has cited no cases which hold that a "possessory" crime constitutes a continuing offense for statute of limitations purposes. Instead, the government relies upon several cases which address whether a defendant's possession of contraband items at different points in time properly may give rise to multiple counts in an indictment. In United States v. Jones, 533 F.2d 1387 (6th Cir.1976), cert. denied, 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977), for example, we addressed whether defendant's illegal possession of the same firearm at five different points in time could provide the basis for five separate counts in an indictment. We held that because defendant's possession of the firearm involved a continuing course of conduct, the alleged offenses constituted only one crime. In the course of so holding, we made the following remarks:
 
 
 45
 Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm. If Congress had wished to punish each act of dominion it could have done so easily by forbidding the acts of dominion instead of the course of conduct.
 
 
 46
 Id. at 1391.
 
 
 47
 Relying upon this language, the government argues that the continuing nature of the "possessory" offenses charged in this case demands that they be treated as continuing crimes for limitations purposes. We disagree. In Jones, the charged offense involved the simple and continuous act of possessing a contraband item. In this case, by contrast, the defendants' "possessory" actions became unlawful only upon their alleged failure to comply with the pertinent safety regulations. Given the sparse language of the statutory provisions under which the defendants are charged, the district court was correct in its determination that "no crime under these provisions can be described without reference to the regulatory provisions upon which the grant of a license is premised." 657 F.Supp. at 855 (emphasis added). As noted earlier, those regulations provided that operators of covered nuclear facilities must submit to the NRC by March 19, 1981 plans and schedules for making certain plant modifications, as well as implement those modifications in accordance with a prescribed time schedule. These regulations provide the substantive bases for the charged offenses and define the "nature" of those offenses. Since we find nothing inherent about failing to submit accurate reports or make plant modifications which demands that these actions (or omissions) be construed as continuing crimes, we find Jones to be inapposite. See United States v. Sloan, 389 F.Supp. 526, 528 (S.D.N.Y.1975) (holding that crime of failing to "make, keep and preserve" certain financial records did not constitute a continuing offense under Toussie ). Therefore, despite the presence of the "possession and use" language in section 2131, we reject the government's assertions in this regard.
 
 
 48
 Finally, we note that the defendants did not attempt to conceal the alleged violations from the NRC or otherwise preclude the government from discovering the alleged offenses. Under different circumstances, a "possessory" crime might properly be found to constitute a continuing offense because of the nature of the defendant's actions. In this case, however, the government was aware well prior to the expiration of the limitations period that the defendants might be guilty of criminal violations. While the government was not able to obtain an indictment until September of 1986, the record shows that a federal grand jury began hearing testimony regarding this matter in mid-1984. Moreover, although the government sought and obtained extensions of the limitations period for the charges in Count One of the indictment, no extensions were sought for the charges contained in Counts Two through Nine. We do not believe that the government should be permitted to correct its own oversight by unilaterally extending the limitations period. We therefore conclude that this case is a particularly inappropriate one in which to construe the crimes charged as continuing offenses.
 
 
 49
 In sum, we do not believe that Congress "must assuredly have intended" that the crimes charged in Counts Two through Nine of the indictment be treated as continuing offenses. We therefore hold that the limitations period on Counts Two through Nine began to run on March 19, 1981 when the NRC submissions were due. Since the indictment was brought in September of 1986, more than five years after the alleged offenses were complete, the district court properly dismissed Counts Two through Nine as time-barred under 18 U.S.C. Sec. 3282.[1]
 
 IV.
 
 50
 For the above-stated reasons, the district court's judgment is hereby AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 The government argues in its brief that the district court erroneously held (1) that sections 2131 and 2272, the criminal penalty provisions, do not apply to commercial licensees who violate NRC regulations, and (2) that the indictment was multiplicious insofar as it charged separate offenses for the same license condition violations. Since discussion of these issues was not necessary to the district court's resolution of this case, we believe that the relevant portions of the district court's opinion constitute obiter dicta. In addition, we specifically reject the district court's conclusion that the absence of continuing penalties for the offenses charged in Counts Two through Nine evinces a Congressional intention that these offenses not be treated as continuing ones