14 F.3d 603
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Karl SCHLEDWITZ, Defendant-Appellant.
 No. 92-6314.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1993.
 
 Before; RYAN and BOGGS, Circuit Judges; and ROSEN, District Judge.*
 PER CURIAM:
 
 
 1
 Karl Schledwitz appeals from his conviction on three counts of mail fraud. He contends that he was tried in violation of the statute of limitations, and complains of several procedural errors at trial. For the reasons given below, we affirm the conviction.
 
 
 2
 * Karl Schledwitz was an attorney in Memphis, and an associate of Jacob F. Butcher and C.H. Butcher, Jr., who together controlled a number of banks in Tennessee and Kentucky. Schledwitz was allegedly a "player" in their group, in that, according to the government, he agreed to take out a large number of loans from various of the Butchers' banks with no intention or ability to repay them. In return, the Butchers sent him legal work, and allowed him to keep some of the proceeds of the loans. The debt service on the loans was to be paid by taking out ever larger loans to cover it. During the course of the scheme, through 1982, Schledwitz took out over $1.5 million in loans, despite the fact that his income in 1982 was $52,163, his all-time high.[1] That the loans were fraudulent was evidenced in part by the fact that his income and business enterprises did not justify granting him the loans, and that it was not in the banks' interest to make the loans.
 
 
 3
 During the course of the investigation, Schledwitz and the government executed four successive statute of limitations (SOL) waivers. The final waiver, executed on May 26, 1988, read as follows:
 
 
 4
 WHEREAS, attorneys for the United States have indicated that there are possible criminal charges which may be brought against KARL A. SCHLEDWITZ, either in the Eastern District of Tennessee or the Western District of Tennessee; and
 
 
 5
 WHEREAS, at least some of the possible charges that may be brought by the United States against KARL A. SCHLEDWITZ conceivably could be barred by the applicable statute of limitations; and
 
 
 6
 WHEREAS, the attorneys for both the United States and KARL A. SCHLEDWITZ, and KARL A. SCHLEDWITZ himself, desire to have discussions regarding the disposition of those possible charges;
 
 
 7
 IT IS, THEREFORE, AGREED that KARL A. SCHLEDWITZ will, and does hereby, waive the application of the statute of limitations for a period of ninety (90) days from the judgment of conviction, acquittal, dismissal or other resolution of all pending charges in United States v. Schledwitz, CR. 87-20193-H, as to any charge which might have been brought but which was delayed because of this Agreement and Waiver. KARL A. SCHLEDWITZ agrees to this waiver after being fully advised by his attorney of the legal consequences of this Agreement and Waiver.
 
 
 8
 This Agreement and Waiver is in addition to the Agreement to Waive Statute of Limitations executed by the parties on May 18, 1987, July 7, 1987, and January 5, 1988, and it is the intent of the parties that this Agreement and Waiver extend the May 18, 1987, July 7, 1987, and January 5, 1988 Agreements for an additional ninety (90) days from and after the judgment of conviction, acquittal, dismissal or other resolution of all pending charges in United States v. Schledwitz, CR. 87-20193-H.
 
 
 9
 On April 27, 1990, Schledwitz's trial in the United States District Court for the Western District of Tennessee (CR-87-20193-H) ended in a mistrial. On January 21, 1992, Schledwitz was named in an eight-count indictment in the Eastern District of Tennessee in the case at hand. Among the claims in the indictment was that Schledwitz borrowed $40,000 from the City and County Bank of Roane County (C & C Roane) to repay a C.H. Butcher gambling debt at Aladdin's Castle in Las Vegas, and that he borrowed $115,000 from the City and County Bank of Anderson County (C & C Anderson) to promote the Butchers' political interests in West Tennessee.
 
 
 10
 On March 6, 1992, Schledwitz filed a motion to dismiss Counts 1 through 7 of the indictment on the ground that the SOL precluded the prosecution and that the SOL waivers he had executed had expired. In other words, the indictment was brought too late. While that motion was under consideration, on March 30, 1992, Schledwitz filed a second motion to dismiss the indictment, claiming that the agreement to waive the SOL precluded the government from bringing the instant prosecution until all of Schledwitz's other cases itemized in the agreement were resolved. Schledwitz at that time was defending himself on charges in federal court in Memphis, charges which ended in a mistrial. In other words, Schledwitz was arguing that the indictment was brought too soon.
 
 
 11
 The district court ultimately denied Schledwitz's motions and allowed the case to go to trial. After the close of the government's proof, the district court granted Schledwitz's motion for a judgment of acquittal as to Counts 4-8. He was found guilty of Counts 1-3, each of which was for mail fraud, in violation of 18 U.S.C. Sec. 1341. He appeals, claiming that his prosecution was barred by the SOL and alleging defects at trial.
 
 II
 
 12
 The district court's interpretation of the meaning of the SOL agreement between the government and Schledwitz is a factual finding. Therefore, we review for clear error.
 
 
 13
 A defendant may waive statutory rights. United States v. Del Percio, 870 F.2d 1090 (6th Cir.1989). The agreement was sufficiently specific that a person of normal intelligence could understand the waiver. Furthermore, Schledwitz himself is an attorney, he was represented by counsel, and he surely understood, or should have understood, the terms of the agreement. We have no trouble in finding that Schledwitz could, and did, waive the statute of limitations.
 
 
 14
 The agreement states that the government may not start a prosecution against Schledwitz any later than ninety days after the charges referred to in the agreement are resolved. A mistrial is not a resolution. Therefore the statute of limitations as contemplated in the waiver had not run.
 
 
 15
 At oral argument, Schledwitz contended that the government was not allowed to start prosecuting him until the other charges were resolved and 90 additional days had passed. He also argued that the waiver would not be valid after the 91st day. This interpretation would produce the odd result that prosecution would be barred for a certain period of time, revive for one day, then be barred once again.
 
 
 16
 We find that the document by its terms prohibits the government from waiting for a period longer than ninety days after the charges mentioned in the waiver agreement were resolved. There was nothing in the document even hinting that a prosecution started at any earlier time would be premature.
 
 III
 
 17
 Schledwitz argues that there was insufficient evidence to prove that the communication forming the basis of his convictions were mailed. He is correct when he asserts there was no direct proof that the documents at issue were mailed: the envelopes in which the documents were received were not introduced into evidence. However, it is not necessary to use direct evidence to prove all the elements of the crime. Circumstantial evidence alone can be sufficient. The standard of review is whether, after looking at the evidence in the light most favorable to the government, any reasonable person could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979).
 
 
 18
 Count 1 charged the mailing of a September 29, 1982 letter from Terry Bridgman, an officer of United American Bank (UAB) Hamilton, to Jesse Barr in Knoxville, Tennessee, relating to a $300,000 loan made by UAB Hamilton.[2] The letter stated: "Enclosed please find a renewal note on Karl Schledwitz for his note which is due July 31, 1982. He is also past due on interest for 7/31/82 ... and 8/31/82." The document offered into evidence was an unsigned copy of the letter Bridgman sent.
 
 
 19
 Evidence adduced on Count 1 circumstantially showed that normal practice in Bridgman's office was to use the United States Postal Service. A witness testified that the standard practice in the office was to use the mail service. The fact that the witness did not have an independent recollection of the mailing is not fatal to the charge. The letter at issue refers to a renewal note, and Government Exhibit # 32 was the executed renewal note. The government is not bound to eliminate speculation on all other possible routes the letter and renewal note may have taken, notwithstanding Schledwitz's assertion that he may have gone into the bank one day and executed the renewal note in person.
 
 
 20
 The mailing charged in Count 2 was a letter from Frank Knies, an officer of C & C Roane, to Schledwitz, which read:
 
 
 21
 Enclosed is a renewal note and your commercial loan payment notice. Please sign the note where indicated by the X and return in the enclosed self-addressed envelope along with your principal and interest payments to this office.
 
 
 22
 Count 3 charges the mailing of the renewal note charged in the Count 2 mailing, along with a principal and interest payment.
 
 
 23
 Knies testified that the Count 2 letter was sent through the U.S. mail and that the Count 3 renewal was received in the U.S. mail--though he did not as a matter of course attend to his mail directly. The government entered into evidence a copy of the executed renewal note, a letter acknowledging receipt of the note, and the loan history card showing receipt of the payment. Furthermore, the Count 2 letter states that a self-addressed stamped envelope is enclosed. Therefore, a reasonable juror could find that the relevant documents were mailed, and did constitute the offense of mail fraud.
 
 IV
 
 24
 Schledwitz moved for a judgment of acquittal on Counts 2 and 3 of the indictment, claiming that the government had failed to establish a link between the mailings and the scheme to defraud. The district court denied the motion, and he renews the argument on appeal.
 
 
 25
 The government charged mail fraud under 18 U.S.C. Sec. 1341. All the government needs to show is the general fraudulent scheme, and mailings to support the scheme. United States v. Montgomery, 980 F.2d 388, 393-94 (6th Cir.1992), The evidence as to the items must be sufficient, but the nexus between the two can be quite slight, and many of the specifics of the fraud need not be itemized. See United States v. Betancourt, 838 F.2d 168, 174 (6th Cir.), cert. denied, 486 U.S. 1013, 108 S.Ct. 1748 (1988) (conspiracy).
 
 
 26
 The $40,000 loan was a fraud on the bank, without regard to its purpose, because Schledwitz knew that he could not repay it. In Schledwitz's best year, 1982, his interest obligations alone exceeded $170,000 while his income was less than $53,000. The president of C & C Roane testified that he made the loan because C.H. Butcher told him to, that he did not know what Schledwitz was going to do with the money, did not know whether Schledwitz would be able to repay the loan, and had no banking relationship with Schledwitz.
 
 
 27
 This nexus also means that the government neither constructively amended, nor varied, the indictment. The indictment includes those loans the government contended were a part of the fraud scheme. Schledwitz knew what he had to defend against--that the loans in that section of the indictment that spelled out the frauds were improper. Schledwitz received proper notice.
 
 V
 
 28
 Finally, Schledwitz argues it was reversible error to deny his motion for a new trial after the dismissal of Counts 4-8. He complains that the jury learned about the Memphis indictment and that there might have been some difference in the admissible evidence were he granted a new trial on Counts 1-3.
 
 
 29
 Schledwitz did not move either before or during trial for relief from prejudicial joinder. The trial court specifically instructed the jury that the dismissal of Counts 4-8 should have no bearing on their deliberations in Counts 1-3, and the court gave Schledwitz's proposed instruction that the jury should only consider evidence presented as to Counts 1-3. In addition, much if not all of the evidence that Schledwitz objects to would have been admissible even had the two sets of counts been severed. He has made no showing of prejudice either from misjoinder or failure to grant a new trial.
 
 
 30
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 His income was as follows: 1978, $13,293; 1979, $34,313; 1980, $28,385; 1981, $31,994. After the banks' collapse, Schledwitz had over $1.5 million in obligations with the FDIC, which he settled for $90,000, and $485,000 in obligations to the SIBC, which he settled for $30,000
 
 
 [2]
 The mail fraud statute does not require that the defendant himself mail a document. It is sufficient that his conduct caused others to mail qualifying documents