*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA (09-5388),
     *Plaintiff-Appellant/Cross-Appellee,*

     *v.*

CANAL BARGE COMPANY, INC. (09-5422),
RANDOLPH MARTIN (09-5421), PAUL D.
BARNES (09-5423), and JEFFERY A.
SCARBOROUGH (09-5424),
     *Defendants-Appellees/Cross-Appellants.*

Nos. 09-5388/5421/
5422/5423/5424

_____

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
Nos. 07-00012-001; 07-00012-002; 07-00012-003; 07-00012-004—
Joseph H. McKinley, Jr., District Judge.

Argued: November 30, 2010

Decided and Filed: January 7, 2011

Before: BATCHELDER, Chief Judge; ROGERS and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John E. Arbab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, for Appellees. **ON BRIEF:** John E. Arbab, John L. Smeltzer, Jennifer A. Whitfield, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Jason Walta, Silver Spring, Maryland, Randy W. Ream, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, Rob Eggert, David A. Lambertus, Mark L. Miller, Mark D. Chandler, Louisville, Kentucky, for Appellees.

     ROGERS, J., delivered the opinion of the court, in which KETHLEDGE, J., joined. BATCHELDER, C.J. (pp. 15–17), delivered a separate opinion concurring in part and dissenting in part.

1

—————————

**OPINION**

—————————

ROGERS, Circuit Judge. This case presents a question of venue, specifically, the appropriate district in which to prosecute a charge of willful failure to "immediately notify" the Coast Guard of a "hazardous condition" aboard a vessel. 33 U.S.C. § 1232(b)(1); 33 C.F.R. § 160.215. The crime is a continuing offense rather than a point-in-time offense, and therefore the location of the crime continued into the Western District of Kentucky as the vessel in question proceeded from the Mississippi River to the Ohio. The district court in this case therefore erred in acquitting defendants on the ground that there was no criminal venue in the Western District of Kentucky.

I

On June 16, 2005, a barge carrying 400,000 gallons of benzene down the Mississippi River sprang a leak near St. Louis, Missouri. The barge was owned by Canal Barge and was being operated under a contract with Conoco Phillips to transport the benzene from Wood Island, Illinois, to Catlettsburg, Kentucky. When the leak was discovered, Jeffery Scarborough, a Canal Barge employee and the pilot of the barge's towboat, instructed deckhands to try sealing the leak by rubbing a bar of soap over the crack. Scarborough telephoned Paul Barnes, the port captain in the company's Belle Chase, Louisiana, office, who directed Scarborough to apply a temporary epoxy patch. With the help of deckhands, Scarborough succeeded in temporarily securing the leak. Captain Randy Martin, who had been off duty and asleep when the leak was first discovered, assumed control of the towboat later in the afternoon.

The epoxy patch held for about four days. During that time, the barge was transferred to a towboat owned by a different company on June 20, near Cairo, Illinois, at the confluence of the Mississippi and Ohio Rivers, and continued onto the Ohio River. On June 20, while the barge continued up the Ohio River, the epoxy patch failed. The captain of the new towboat notified the Coast Guard office in Louisville, Kentucky, and

the barge was dropped at a fleeting area near Mount Vernon, Indiana, where environmental crews cleaned the benzene from the barge's deck and permanently repaired the leak.

A three-count indictment filed two years later in the Western District of Kentucky charged Canal Barge, Scarborough, Barnes, and Martin with: (1) conspiracy to violate the Ports and Waterways Safety Act; (2) violation of the PWSA; and (3) negligent violation of the Clean Water Act.[1] After a two-week trial, the defendants moved for a judgment of acquittal, arguing that the government had failed to prove that venue was proper in the Western District of Kentucky. The district court reserved ruling on the motion, and the jury returned a guilty verdict on Count 2, but acquitted the defendants of the remaining two counts.

Defendants then renewed their motion for a judgment of acquittal on the ground of improper venue. The defendants also argued that the government had failed to introduce sufficient evidence that the proper Coast Guard office in St. Louis was not notified of the June 16 leak, and sufficient evidence that the defendants' violation of the PWSA was knowing and willful. In the alternative, the defendants argued that they were entitled to a new trial because their convictions were against the weight of the evidence. Additionally, Martin moved separately for a judgment of acquittal, arguing that the government did not show that a hazardous condition existed on the barge while he was in charge of the vessel, and Canal Barge moved separately for a judgment of acquittal, contending that the government failed to prove that a Canal Barge employee violated the PWSA with the intent to benefit the company.

On November 25, 2008, the district court granted the defendants' motion, concluding that the PWSA violation was a point-in-time offense that was complete at the

---

[1]Count 2 of the indictment alleged that "[o]n or about June 16, 2005, and continuing thereafter until on or about June 20, 2005, in the Western District of Kentucky, Henderson County, Kentucky, and elsewhere, defendants Canal Barge Company, Inc., Paul D. Barnes, Jeffery A. Scarborough, and Randolph Martin, each aided and abetted by the other, knowing of a hazardous condition aboard a vessel, . . . knowingly and willfully failed to immediately notify the nearest Coast Guard Marine Safety Office of a hazardous condition" in violation of 33 U.S.C. § 1232(b)(1) and 33 C.F.R. § 160.215.

time the defendants failed to immediately notify the Coast Guard of the hazardous condition, which occurred on the Mississippi River prior to entry into the Western District of Kentucky. The district court denied all of the defendants' remaining motions.

On appeal, the government argues that the district court erred in granting the defendants' post-verdict motion for judgment of acquittal for lack of proper venue, because the defendants' PWSA violation is a continuing offense under 18 U.S.C. § 3237(a) ¶ 1. In the alternative, the government argues that the PWSA violation is an offense "involving . . . transportation in interstate . . . commerce" under 18 U.S.C. § 3237(a) ¶ 2.

The defendants cross-appeal the district court's denial of their motion for judgment of acquittal on the remaining grounds, arguing that the government failed to prove that the defendants did not immediately notify the nearest Coast Guard office of the June 16 leak, and that the government failed to prove the elements of knowledge and willfulness. The defendants also argue that the district court abused its discretion in denying their motion for a new trial. Finally, both Martin and Canal Barge appeal the denial of their separate motions for judgment of acquittal for the reasons advanced in the district court.

II

The defendants' failure to immediately report a hazardous condition aboard the barge was a continuing offense because the duty to report continued from the time the leak was discovered on June 16 until the Coast Guard was notified on June 20. Because the barge continued moving until the unreported hazardous condition was in the Western District of Kentucky, the PWSA violation occurred in part in the Western District of Kentucky. Venue was therefore proper in that district under 18 U.S.C. § 3237(a) ¶ 1.

For venue purposes in federal criminal cases, Congress has the power to create a "continuing offense" by defining "the locality of a crime [to] extend over the whole area through which force propelled by an offender operates." *United States v. Johnson*,

323 U.S. 273, 274 (1944).  Because the PWSA does not specifically define venue for criminal prosecutions, we look to the catch-all venue provision, which covers situations where the elements of the offense are committed in more than one district.  18 U.S.C. § 3237(a).  The catch-all statute states in part:

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a) ¶ 1.  This provision applies on its face if the offense was "continued" on the Ohio River, which at the relevant point is entirely in the Western District of Kentucky.

The offense in this case was so "continued."  The criminal violation is the willful and knowing violation of a Coast Guard regulation promulgated under the PWSA, 33 U.S.C. § 1232(b)(1), that in turn requires:

> Whenever there is a hazardous condition either aboard a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge shall immediately notify the nearest Coast Guard Sector Office or Group Office.

33 C.F.R. § 160.215.  The time for complying with this obligation clearly starts "immediately," which means that any delay is against the regulation.  Contrary to the interpretation urged by the defendant and accepted by the district court, however, the "immediate" start of the obligation does not mean that the obligation ceases as soon as there has been some delay in reporting.  The natural reading of the regulation, instead, is that the obligation to report starts immediately when the relevant actor has the relevant knowledge, and continues at least until a report is made or the Coast Guard otherwise becomes aware of the condition.  Stated differently, the purpose of the word "immediately" is simply to preclude a defense that the duty was discharged by giving

notice several hours—or in this case, days—after the hazard was discovered.**2**  Under such a natural interpretation of the regulation, venue lay in the Western District of Kentucky in this case.

In addition to being the most textually plausible, this reading of the regulation is also the most sensible.  It would frustrate the purpose of the PWSA if the duty to report were not ongoing, because the need to notify the Coast Guard of a hazardous condition does not dissipate over time.  The harm from an unreported hazard is more likely to increase rather than to decrease from the continued lack of a report.  Moreover, an unreported hazard may cause harm in more than one district.  And each district through which a hazard passes has an interest in preventing that hazard from causing injury or environmental damage within the district.  *See United States v. Reed*, 773 F.2d 477, 482 (2d Cir. 1985).

While it is certainly true that the crime was complete and chargeable shortly after the leak was discovered on June 16, that does not mean that the crime did not continue for venue purposes once it was sufficiently complete to ground a conviction.  A crime can be both complete and continuing for venue purposes.  *See United States v. Cores*, 356 U.S. 405 (1958); *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999).  For example, in *Cores*, the Supreme Court held that the crime of "willfully remaining" in the United States after the expiration of a landing permit was a continuing offense.  356 U.S. at 408-09.  The defendant argued that the offense was complete the moment the permit expired, and that even if he remained in the United States thereafter, he was no longer committing the offense.  *Id.*  The Court rejected this argument, explaining that the statutory prohibition against "willfully remaining" in the United States imposed a continuing duty on the defendant to leave the country, and his failure to leave at the moment his permit expired did not exhaust that duty.  *See id.*; *see also Rodriguez-Moreno*, 526 U.S. at 280-81.  Similarly, the failure to immediately notify the Coast

---

**2**Indeed, the defendants themselves point out in their brief that the purpose of the "immediacy" requirement is to prevent fast-developing crises, like the 1993 Amtrak disaster in which a passenger train plunged off a railroad bridge eight minutes after the bridge was damaged by a passing barge.

Guard of the hazardous condition on June 16 "satisfies the definition of the crime, but it does not exhaust it." *Cores*, 356 U.S. at 409.

The defendants rely on *Toussie v. United States*, 397 U.S. 112 (1969), in which the Supreme Court held that a failure to register for the draft could not be deemed a continuing offense for purposes of the statute of limitations. The defendants also cite *United States v. Del Percio*, 870 F.2d 1090 (6th Cir. 1989), a decision that relied on *Toussie* in holding that the defendants' failure to submit plans and schedules for making plant modifications in violation of the Atomic Energy Act was not a continuing offense for statute of limitations purposes.

These cases are distinguishable because they involve statutes of limitations, not questions of venue. Of course, questions of venue, like statutes of limitations, involve a temporal element. However, the distinction is sensible in light of the different consequences that attach to a determination that a crime is a continuing offense for statute of limitations purposes as opposed to venue purposes. If the crime is deemed to be a continuing offense for venue purposes, the defendant is merely exposed to prosecution in a different district. But if the crime is a continuing offense for statute of limitations purposes, the defendant may be prosecuted after a time at which he would otherwise have no exposure whatsoever. Thus, interpreting a crime as a continuing offense for statute of limitations purposes has more serious consequences than it does in the context of venue. Indeed, the Supreme Court was sensitive to this concern in *Toussie*, observing that construing failure to register for the draft as a continuing offense "could effectively extend the final date for prosecution until as late as 13 years after the crime is first complete." *Toussie*, 397 U.S. at 122. The Court specifically distinguished *Cores* and *Armour Packing Co. v. United States*, 209 U.S. 56 (1908), two cases that dealt with venue and did not involve the statute of limitations. *Toussie*, 397 U.S. at 121.

The defendants also argue that the rule of lenity requires that any ambiguity in the statutory language must be resolved in favor of Canal Barge and its employees. *See United States v. Santos*, 553 U.S. 507, 514 (2008). However, the rule of lenity is

typically invoked only when interpreting the substantive scope of a criminal statute or the severity of penalties that attach to a conviction—not the venue for prosecuting the offense. *See, e.g.*, *United States v. R.L.C.*, 503 U.S. 291, 305 (1992); *Bifulco v. United States*, 447 U.S. 381, 387 (1980). *Santos*, the case cited by the defendants, involved a question of the substantive scope of the federal money-laundering statute: whether the term "proceeds" referred to "profits" or the broader "receipts." *See* 553 U.S. at 511-12. Moreover, the rule of lenity is only a tiebreaker of last resort when, "after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17 (1994). But here the terms of the statute, together with the purpose of the PWSA, leave no ambiguity. "Although the clause might have been more meticulously drafted, the 'grammatical possibility' of a defendant's interpretation does not command a resort to the rule of lenity if the interpretation proffered by the defendant reflects 'an implausible reading of the congressional purpose.'" *Abbott v. United States*, 131 S. Ct. 18, 31 n.9 (2010) (quoting *Caron v. United States*, 524 U.S. 308, 316 (1998)).

Finally, the defendants argue that a narrow reading of whether the crime continued is required by *Johnson*, in which the Supreme Court ruled that:

> If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.

323 U.S. at 276. *Johnson* involved the Federal Denture Act, which prohibited "use [of] the mails or any instrumentality of interstate commerce for the purpose of sending or bringing into" a district a set of dentures cast by an unlicensed dentist. The Court used the "constitutional concern for trial in the vicinage" as a tiebreaker against the continuing offense doctrine where the statute was susceptible to two different readings. *Id.* Distinguishing the crime of "sending" from that of "transportation" in another statute, the Court held that venue for illegal sending was limited to the district in which the unlawful dentures were sent, and not where the dentures were received. *Id.* at 277.

Importantly, the Court relied explicitly on the absence of a specifically applicable venue provision. *Id.*

In response to *Johnson*, Congress added the second paragraph of § 3237(a), which "removes all doubt as to the venue of continuing offenses and makes unnecessary special venue provisions except in cases where Congress desires to restrict the prosecution of offenses to particular districts." Revision Notes to 18 U.S.C. § 3237(a). The revision provided that "[a]ny offense involving the use of the mails [or] transportation in interstate . . . commerce . . . is a continuing offense." Although we do not rely directly on that provision in this case, the revision arguably requires a more expansive definition of a continuing offense than that applied in *Johnson*. *But see United States v. Brennan*, 183 F.3d 139, 147 (2d Cir. 1999) (reasoning that the rule of construction announced in *Johnson* retains its general validity notwithstanding the enactment of the second paragraph of § 3237(a)). Furthermore, cases decided subsequently to both *Johnson* and the enactment of the revised § 3237(a) provision make clear that the Supreme Court does not hesitate to construe a crime as a continuing offense when that is the superior interpretation of the statute. *See Cores*, 356 U.S. at 408-09; *Rodriguez-Moreno*, 526 U.S. at 280-82. Like the rule of lenity, the *Johnson* rule is only a tiebreaker, and it does not overcome the more natural reading of the statute here.

For these reasons, the most sensible characterization of the offense is that the PWSA and 33 C.F.R. § 160.215 proscribe an ongoing failure to report a hazardous condition, making venue proper in the district where the hazardous condition continued unreported.

Because we conclude that the PWSA violation is a continuing offense under 18 U.S.C. § 3237(a) ¶ 1, we need not address the government's alternative theory—that the PWSA violation is an offense "involving . . . transportation in interstate . . . commerce" under the second paragraph of 18 U.S.C. § 3237(a). We also need not determine whether venue might also lie in the district where the nonreporting officer

was, or where the report was supposed to be received, or where the effects of the unreported hazard may have been felt.

## III

Defendants also cross-appeal the denial of their motions for judgment of acquittal based on insufficiency of the evidence, and their joint motion for a new trial on the ground that the verdict was against the weight of the evidence. Because the judgment of acquittal for improper venue must be vacated, we address the remaining grounds rejected by the district court.

## A

Defendants are not entitled to a judgment of acquittal on the remaining grounds presented to the district court because the evidence was sufficient to establish the elements of the PWSA offense beyond a reasonable doubt. "Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In cases in which we assess the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994).

Viewed in the light most favorable to the government, the evidence was sufficient for a jury to find that the defendants failed to notify any Coast Guard office, including the St. Louis office, of the hazardous condition aboard the barge. For example, Officer Robert Moran, a marine inspector from the Coast Guard's Louisville office, testified that he questioned Jay Little, Canal Barge's maintenance superintendent, about "what the reason was – that no Coast Guard, not the Coast Guard in Louisville, any Coast Guard, where the barge had come from, . . . had not been contacted." Robin Mason, a Canal Barge employee who worked in the Belle Chasse office, testified that

she prepared a written "incident report" for the June 16 leak and faxed it to the Coast Guard on June 21, and that she was surprised the leak had not been reported to the Coast Guard before June 21. And Officer Chuck Mellor testified that he reviewed the towboat's "ship log" and found that it did not contain a record of the June 16 leak or any calls to the Coast Guard.

Likewise, the government presented sufficient evidence that the defendants' failure to notify the Coast Guard of the hazardous condition was knowing and willful, instead of a poor judgment call or an honest mistake. First, the government presented evidence that Scarborough, Barnes, and Martin were aware of a hazardous condition aboard the barge.[3] The record indicates that the benzene leak was reported to Scarborough around 2:00 pm on June 16; that Scarborough told a deckhand to try sealing the leak with a bar of soap; that Scarborough notified Barnes at the company's headquarters that a leak had been found; and that Barnes instructed Scarborough to apply an epoxy patch to secure the leak. The record also indicates that Barnes thought the temporary repair would enable the company to get the barge to its destination and back before it was permanently repaired. Finally, the record indicates that, around 3:00 pm on June 16, Martin was told that a leak had been found and stopped with a bar of soap; that he was informed later that afternoon that there had been a spill and that the deck crew had inhaled toxic fumes; and that Martin took command of the towboat later in the afternoon.

In addition, the government presented expert testimony that benzene is toxic, highly explosive, and a known human carcinogen; that even a very small leak could be hazardous, because of the risk that it might enlarge over time; and that benzene is an industrial solvent that will break down and dissolve epoxy material. The jury also heard testimony that Scarborough, Barnes, and Martin were all trained maritime shipping

---

[3]The regulations define a hazardous condition as "any condition that may adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve collision, allision, fire, explosion, grounding, leaking, damage, injury or illness of a person aboard, or manning-shortage." 33 C.F.R. § 160.204.

professionals with decades of experience on the river. A rational jury could find that all three defendants knew that even a small benzene leak patched with an epoxy material would be a "condition that may adversely affect the safety of any vessel . . . or the environmental quality of any . . . navigable waterway." 33 C.F.R. § 160.204.

Second, the government introduced sufficient evidence that the defendant's failure to immediately notify the Coast Guard was willful. The record indicates that the defendants failed to follow the company's Coast Guard-approved "vessel response plan," which included procedures for a spill or threat of a spill. Another Canal Barge captain, John DeVaux, testified that he had been trained to call the Coast Guard when a spill or threat of spill occurred aboard a barge; that a decision to notify the Coast Guard under these circumstances would not have been "a close call" but rather "dead obvious;" and that there was not a captain in the world who would not have called the Coast Guard in a case like this. The jury also heard evidence that Scarborough and Martin failed to record the leak or the attempted patch in the towboat's ship log, even though they signed off on the log as true. Viewed in the light most favorable to the government, a rational jury could find that Scarborough, Barnes, and Martin were each aware of a hazardous condition aboard the barge, and that their failure to call the Coast Guard was not merely a poor judgment call, but rather a knowing and willful violation of the law.

The district court also properly denied the separate motions for judgment of acquittal filed by Martin and Canal Barge, because, viewed in the light most favorable to the government, the evidence was sufficient for a rational jury to find that both defendants willfully failed to immediately notify the Coast Guard of a hazardous condition aboard the barge.

First, the evidence was sufficient to show that Martin knew of a hazardous condition aboard the barge and willfully failed to immediately notify the Coast Guard. The record shows that Martin was awake at 3:00 pm, about an hour after the leak was discovered; that he was told later that afternoon that there had been a spill and that the deck crew had inhaled toxic fumes; and that he took control of the towboat later in the

afternoon. A rational jury could find that Martin knew of a benzene leak aboard the barge about an hour after it was discovered. As captain of the barge's towboat, Martin was ultimately responsible for notifying the Coast Guard of the leak. And, for the reasons discussed above, there was sufficient evidence for a jury to find that Martin's failure to notify the Coast Guard after learning of the leak was willful.

Second, the evidence was sufficient to show that an employee of Canal Barge failed to immediately notify the Coast Guard with the intent, at least in part, to benefit the company. The district court instructed the jury that to convict a corporate defendant, it must find beyond a reasonable doubt that an agent of the corporation acted with the intent to benefit the corporation. The jury heard testimony that the delay required to offload and permanently repair the barge would have cost Canal Barge time and money. Coast Guard Officer Moran testified that barge companies are concerned with delays because they are costly. And Canal Barge captain Simpson Kemp testified that delays, though normal on the river, cost time and money. Viewing this evidence in the light most favorable to the government, a rational jury could find that one or more Canal Barge employees acted with the intent, at least in part, to benefit the company.

B

The district court also properly concluded that the defendants were not entitled to a new trial; this is because the evidence did not "preponderate[] heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). The decision of whether to grant a new trial is committed to the "sound discretion of the trial judge," *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982), and this discretion should be exercised only in "extraordinary circumstance[s]," *Hughes*, 505 F.3d at 593.

Defendants urge that they are entitled to a new trial because the weight of the evidence does not support a finding of a hazardous condition, and because the evidence does not establish that the defendants' failure to notify the Coast Guard was knowing and willful. The defendants argue that the leak was not a "hazardous condition" because "the product did not get into the water." This was disputed at trial. But even if none of

the benzene had actually spilled into the river, that was not the only risk presented by the leaking barge. Because benzene is highly explosive, the risk in this case was not just that the liquid would spill overboard and contaminate the river, but that the leaking fuel would ignite and blow up the barge. The district court acted well within its discretion in concluding that the evidence did not preponderate heavily against the jury's finding that a hazardous condition existed aboard the barge on June 16.

Likewise, for the reasons already discussed, the district court did not abuse its discretion in concluding that the evidence did not preponderate heavily against the jury's finding that the defendants' failure to notify the Coast Guard was knowing and willful.

IV

We reverse the district court's judgment of acquittal for improper venue, and remand for further proceedings consistent with this opinion.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

ALICE M. BATCHELDER, Chief Judge, concurring in part and dissenting in part.  The majority opinion correctly concludes that there was sufficient evidence to convict Defendants.  The evidence in favor of conviction was more than sufficient to withstand the limited scrutiny which we give such matters on appeal.  I therefore concur in the majority opinion's affirmance of the district court's denial of Defendants' motions for judgment of acquittal and for a new trial.  However, I must vigorously dissent from the majority opinion's conclusion that the failure to "immediately" notify the Coast Guard is a continuing offense.

Venue is a constitutional protection, U.S. Const. art. III, § 2 ("Trial shall be held in the State where the said Crimes shall have been committed . . . ."), as well as a statutory one, and we should always take appropriate care to assure that the government abides by relevant constitutional provisions.  The majority opinion adopts the government's position in holding that the offense in this case, a violation of 33 U.S.C. § 1232(b)(1) and, by derivation, 33 C.F.R. § 160.215, is a continuing offense.  The regulation in question requires "immediate[] notif[ication of] the nearest Coast Guard Sector Office or Group Office."  The majority opinion concludes that its interpretation—that failure to *immediately* notify can be a *continuing* offense—is not only "a natural interpretation," but also "the most textually plausible" and "most sensible."  I respectfully submit that the English language would only accept the majority opinion's interpretation after being bullied into submission.

A continuing offense, as correctly described by the majority opinion, is one in which the offense is "begun in one district and completed in another, or committed in more than one district."  18 U.S.C. § 3237(a).  That description simply does not apply to the offense which Defendants committed.  The failure to immediately notify the Coast Guard was an omission which became a complete and chargeable offense when, near St.

Louis, Missouri, the leak was discovered and not reported to the Coast Guard.  The majority opinion concedes this point, Maj. Op. at 6, but simultaneously concludes that the immediacy prong of the regulation merely starts the clock, a clock which continues running indefinitely until notice actually is given.[1]

I simply cannot make linguistic sense of the majority opinion's conclusion that a failure to *immediately* notify the nearest Coast Guard station can be an offense that is perpetual and ongoing.  To support its holding, the majority opinion invokes *United States v. Cores*, 356 U.S. 405, 408-09 (1958), in which the Supreme Court held that the crime of "willfully remaining" in the United States after the expiration of a landing permit was a continuing offense.  The majority opinion claims that the offenses of "willfully remaining" and "failure to immediately notify" are similar, but the comparison is simply untenable.  If someone wrongfully remains past a deadline, he has violated the initial proscription, but the affirmative act of continuing to remain is the very act that is proscribed.  In contrast, failure to *immediately* notify is an omission that is complete right now, not right now and then again every five, ten, or thirty minutes for the indefinite future.  Once the violation is completed, there is no affirmative act that is being proscribed.

The First Circuit rejected a similar argument by the government in *United States v. Salinas*, 373 F.3d 161 (1st Cir. 2004).  There, the government also argued that "a crime can be both complete and continuing for the purposes of venue analysis." *Id.* at 168.  The First Circuit conceded that, "[a]s a theoretical matter, that proposition is true," but it clearly viewed the government's claim with great skepticism, and rejected that "one last arrow in [the government's] quiver," because doing so would "effectively authorize the government to choose a venue of its liking even when, as now, the crime was complete before a second district was implicated." *Id.* at 168-69.  The First Circuit was especially concerned about the expansion of venue for crimes which, like the one

---

[1]The majority opinion rejects the notion that this case has anything to do with statutes of limitations, yet it is only a very small step from the legal framework established by the majority opinion here to extend, indefinitely, the statute of limitations for violations of the pertinent regulation.

at issue here, require specific intent, worrying that "[a]llowing specific intent to continue a crime into any district in which that intent has consequences would significantly expand the range of permissible venues." The First Circuit correctly rejected such an unwarranted expansion of venue, and we should do the same.

That failure to *immediately* notify cannot be a continuing offense is further confirmed by other language in the regulation. In order to avoid violating the regulation, one need do more than notify just any Coast Guard official—one must notify the "nearest" Coast Guard Station. That term becomes nonsensical if the violation continues indefinitely.

I do not understand the majority opinion's insistence on its flawed interpretation of the regulation. That the Defendants committed the crime for which they were convicted seems clear, but requiring the government to abide by statutory and constitutional restrictions on venue would not mean that Defendants would escape punishment, only that the government would have to prosecute them in the proper venue. While this would certainly not be the most efficient use of resources, concerns of efficiency cannot be allowed to trump constitutional and statutory venue provisions, especially when the government caused the inefficiency by bringing criminal claims in what was clearly the wrong venue.