The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 9, 2020

## 2020COA104

**No. 19CA0393, *Gonzales v. Arapahoe Cnty. Court* — Persons Required to Report Child Abuse or Neglect; Courts and Court Procedure — Limitation of Actions**

As a matter of first impression, a division of the court of
appeals considers whether a mandatory reporter's willful failure to
report child abuse or neglect under section 19-3-304, C.R.S. 2019,
constitutes a continuing offense for the purposes of determining
when the statute of limitations period begins to run.  In the absence
of clear legislative intent, the division concludes that failure to
report is not a continuing offense, and that the statute of
limitations begins to run when a mandatory reporter has reason to
know or suspect child abuse or neglect but willfully fails to make an
immediate report.

In a related case announced this same day, *MacIntosh v. People*, 2020 COA 105, another division of this court reaches the same conclusion based on the plain language of the statute. The division here does not agree that the plain language of the statute unambiguously and inexorably compels that result. Instead, after applying the appropriate rules of statutory construction and consulting legislative history, the division simply cannot conclude that the General Assembly assuredly intended failure to report to be a continuing offense.

COLORADO COURT OF APPEALS                                    **2020COA104**

Court of Appeals No. 19CA0393
Arapahoe County District Court No. 18CV31913
Honorable Stephen J. Schapanski, Judge

David Gonzales,

Plaintiff-Appellee,

v.

County Court of Arapahoe and the Honorable Cheryl Rowles-Stokes, Judge,

Defendants-Appellants.

ORDER AFFIRMED

Division VII
Opinion by JUDGE BROWN
Fox and Navarro, JJ., concur

Announced July 9, 2020

Recht Kornfeld P.C., David M. Beller, Andrew E. Ho, Denver, Colorado, for Plaintiff-Appellee

Philip J. Weiser, Attorney General, Emily Buckley, Assistant Attorney General, Michael Kotlarczyk, Assistant Attorney General, Denver, Colorado, for Defendants-Appellants

¶ 1    In this C.R.C.P. 106(a)(4) action, we consider whether a mandatory reporter's willful failure to report child abuse or neglect constitutes a continuing offense such that the statute of limitations does not begin to run until a report is made or law enforcement discovers the failure to report.

¶ 2    Under section 19-3-304(1)(a), C.R.S. 2019 (the failure to report statute), any mandatory reporter

> who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect . . . shall immediately upon receiving such information report or cause a report to be made of such fact to the county department, the local law enforcement agency, or through the child abuse reporting hotline system . . . .

Any mandatory reporter "who willfully violates" the reporting requirement commits a class 3 misdemeanor.  § 19-3-304(4).

¶ 3    But when does the statute of limitations begin to run on this misdemeanor offense?  Is it triggered the moment the mandatory reporter willfully fails to immediately report the child abuse or neglect?  Or is it tolled until a report is finally made or the failure to report is discovered?

¶ 4    In a related case, *MacIntosh v. People*, 2020 COA 105, another division of this court holds that the plain language of section 19-3-

1

304 dictates that willful failure to report is not a continuing offense, and that the statute of limitations begins to run when a mandatory reporter has reason to know or suspect child abuse or neglect but willfully fails to make an immediate report. We agree with the *MacIntosh* division's conclusion, albeit on slightly different grounds.

¶ 5 We do not agree that the plain language of the statute unambiguously and inexorably compels our holding; instead, after applying the appropriate rules of statutory construction and consulting legislative history, we simply cannot conclude that the General Assembly assuredly intended failure to report to be a continuing offense. In the absence of clear legislative intent, we must conclude that failure to report is not a continuing offense, and that the statute of limitations begins to run when a mandatory reporter has reason to know or suspect child abuse or neglect but willfully fails to make an immediate report.

¶ 6 Accordingly, we conclude the Arapahoe County Court and the Honorable Cheryl Rowles-Stokes (collectively, the County Court) erred by denying David Gonzales's motion to dismiss the charge of failure to report when the limitations period had expired before the charge was filed.

## I.    Background

¶ 7    The People allege that in April 2013, C.V., a female student at Prairie Middle School, told another student that when she was fourteen she had a sexual relationship with a teacher, Brian Vasquez.  According to the People, the student's allegation was disclosed to the school's dean, but rather than report the abuse, the dean met with C.V. and asked her to reconsider her allegation given the consequences that it could have for Vasquez.

¶ 8    The dean then took C.V. to meet with Gonzales, the principal of Prairie Middle School.  As a public school official, it is undisputed that Gonzales is a mandatory reporter under section 19-3-304(2)(*l*).  The People allege Gonzales questioned C.V., again stressing the consequences that her accusations would have for Vasquez.

¶ 9    Ultimately, C.V. retracted her claim.  She was subject to disciplinary proceedings, after which she was suspended from school for purportedly falsifying an allegation against Vasquez.  Gonzales never reported C.V.'s sexual assault allegation, as required by the failure to report statute.

¶ 10    In August 2017, police interviewed Vasquez regarding allegations of sexual abuse pertaining to a different student.

Vasquez confessed to sexually abusing numerous students — including C.V. — starting in 2013.

¶ 11    In January 2018, after a grand jury hearing, Gonzales was indicted on one count of failure to report child abuse in violation of section 19-3-304(1)(a).  At the time Gonzales was charged, the statutory limitations period for his alleged offense was eighteen months.  § 16-5-401(1)(a), C.R.S. 2018.[1]  Accordingly, Gonzales moved to dismiss the indictment, asserting that his prosecution was initiated after the limitations period had expired in October 2014.

¶ 12    The People countered that the duty to report is a continuing obligation, failure to meet that obligation is a continuing offense, and the statute of limitations was not triggered until law enforcement discovered the alleged nondisclosure in August 2017. The County Court denied Gonzales's motion, concluding that the

---

[1] In March 2019, the General Assembly established a three-year statute of limitations on a mandatory reporter's failure to report known or suspected "unlawful sexual behavior as defined in section 16-22-102(9)" involving a child.  § 19-3-304(5), C.R.S. 2019; *see* Ch. 56, sec. 1, § 19-3-304(5), 2019 Colo. Sess. Laws 195.

General Assembly intended failure to report child abuse to be a continuing offense.

¶ 13    Gonzales challenged the County Court's order through a C.R.C.P. 106(a)(4) action in the district court. In a detailed order, the district court concluded that failure to report is not a continuing offense and ordered the County Court to dismiss the criminal case.

¶ 14    The County Court appeals, contending that the district court erred by finding that Gonzales's prosecution was barred by the applicable statute of limitations because failure to report constitutes a continuing offense.

## II.    Standard of Review and Applicable Law

### A.    Rule 106(a)(4)

¶ 15    An original proceeding under C.R.C.P. 106 is a proper avenue for challenging the county court's jurisdiction to proceed on criminal charges. *See Huang v. Cty. Court,* 98 P.3d 924, 927 (Colo. App. 2004). This is in contrast to an appeal challenging a county court conviction or seeking review of the county court's rulings during the course of a criminal case properly before the county court, which must be pursued in the district court. *See* § 13-6-310(1), C.R.S. 2019; Crim. P. 37. And any further review of a

5

district court's decision on appeal from the county court is solely via a petition for writ of certiorari to the supreme court. § 13-6-310(4); Crim. P. 37(h); *see also* § 13-4-102(1)(f), C.R.S. 2019. But appellate review of the district court's decision in an original Rule 106 action is within our purview. § 13-4-102(1); *see also Huang*, 98 P.3d at 927.

¶ 16　　In a proceeding under C.R.C.P. 106(a)(4), district court review of a county court's ruling is limited to whether the county court exceeded its jurisdiction or abused its discretion when there is no plain, speedy, or adequate remedy otherwise provided by law. *Huang*, 98 P.3d at 928. The district court's review is based on the evidence in the record before the county court. *City & Cty. of Denver v. Cty. Court*, 37 P.3d 453, 455-56 (Colo. App. 2001). A county court abuses its discretion under Rule 106(a)(4) by misconstruing or misapplying the law. *Roalstad v. City of Lafayette*, 2015 COA 146, ¶ 13.

¶ 17　　On appeal from a district court's decision in a Rule 106 action, we are in the same position as the district court, so we review the district court's decision de novo to assess whether the county court

exceeded its jurisdiction or abused its discretion. *Berges v. Cty. Court,* 2016 COA 146, ¶ 6.

## B. Statute of Limitations and Continuing Offenses

¶ 18    "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970).  Criminal statutes of limitation are designed to protect individuals from having to defend themselves against charges when the facts have been obscured by the passage of time, to minimize the danger of punishment for acts in the far-distant past, and to encourage law enforcement to promptly investigate suspected criminal activity. *Id.* at 114-15.  For these reasons, criminal statutes of limitation are to be liberally construed in a favor of the defendant. *Id.* at 115.

¶ 19    A statute of limitations typically begins to run when the crime is complete. *People v. Thoro Prods. Co.*, 70 P.3d 1188, 1192 (Colo. 2003).  In certain circumstances, however, a crime continues beyond the first moment when all its substantive elements are satisfied. *Id.*  With a continuing offense, the statute of limitations

does not begin to run so long as the illegal conduct continues. *Id.* at 1193.

¶ 20    Because there is a tension between the purpose of a statute of limitations and the continuing offense doctrine, the doctrine should only be applied in limited circumstances. *Id.*; *People v. Perez*, 129 P.3d 1090, 1092 (Colo. App. 2005) ("There is a presumption against a crime being a continuing offense."). An offense should be considered continuing only if (1) "the explicit language of the substantive criminal statute compels such a conclusion" or (2) "the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115; *see also Allman v. People*, 2019 CO 78, ¶ 12; *Thoro Prods. Co.*, 70 P.3d at 1193.

¶ 21    Determining whether an offense is continuing is a matter of statutory interpretation, which we review de novo. *Allman*, ¶ 10.

¶ 22    When construing a statute, we must ascertain and give effect to the intent of the General Assembly. *State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000). To determine legislative intent, we look first to the plain language of the statute. *Id.* We read words and phrases in context and construe them literally according to common usage.

8

*People v. Yascavage*, 101 P.3d 1090, 1093 (Colo. 2004). We consider the statute as a whole, construing each provision consistently and in harmony with the overall statutory design. *Allman*, ¶ 13.

¶ 23    If the statutory language is clear and unambiguous, we do not resort to any further rules of statutory construction; we enforce the statute as written. *Id.*; *Nieto*, 993 P.2d at 500. However, where the words chosen by the legislature are capable of two or more reasonable constructions leading to different results, the statute is ambiguous. *Carrera v. People*, 2019 CO 83, ¶ 22; *Nieto*, 993 P.2d at 500-01. If the statute is ambiguous, we may rely on other interpretive aids such as legislative history, the General Assembly's declaration of purpose, the consequences of a given construction, and the end to be achieved by the statute. § 2-4-203, C.R.S. 2019; *Yascavage*, 101 P.3d at 1093; *Nieto*, 993 P.2d at 501; *McLaughlin v. Oxley*, 2012 COA 114, ¶ 10.

### III.   Analysis

#### A.   The Failure to Report Statute is Ambiguous

¶ 24    Gonzales was charged with failing to report child abuse or neglect in violation of section 19-3-304. As noted, that statute

requires that a mandatory reporter "who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect . . . shall immediately upon receiving such information" make a report. § 19-3-304(1)(a). A mandatory reporter who "willfully violates the provisions of subsection (1)" commits a class 3 misdemeanor. § 19-3-304(4).

¶ 25    We are tasked with deciding whether failure to report is a continuing offense such that the statute of limitations does not begin to run until the mandatory reporter at issue makes a tardy report or until law enforcement discovers the crime.

¶ 26    It is undisputed that "the explicit language of the substantive criminal statute" does not answer the question. *See Toussie*, 397 U.S. at 115. The General Assembly did not define failure to report as a continuing offense as it has so defined other crimes. *See, e.g.*, § 18-2-204(1), C.R.S. 2019 (defining conspiracy as a "continuing course of conduct"); § 18-8-201(2), C.R.S. 2019 (defining escape as "a continuing activity").

¶ 27    So, we must turn to the alternative test and determine whether the nature of the crime involved is such that the General Assembly "must assuredly have intended that it be treated as a

10

continuing one." *Toussie*, 397 U.S. at 115; *see Allman*, ¶ 14. And we begin by looking to the plain language of the statute. *Allman*, ¶ 15.

¶ 28 Although the parties focus on different words in the statute, both contend that the plain language supports their respective interpretations. The County Court focuses on the language that requires a mandatory reporter to make a report when he "*has reasonable cause*" to know or suspect child abuse. § 19-3-304(1)(a) (emphasis added). Relying on the dictionary definition of "have," *see* Webster's Third New International Dictionary 1039 (2002) (defining "have" to mean "to hold in possession as property" and "to hold, keep or retain"), the County Court argues that the General Assembly intended to create a duty to report that continues so long as the mandatory reporter possesses knowledge or suspicion of child abuse. According to the County Court, because the duty to report continues the entire time a mandatory reporter "continues to have, possess, or retain" such information, the mandatory reporter continues to violate the statute each and every day he does not make a report.

¶ 29    But Gonzales focuses on the General Assembly's use of the words "shall *immediately* . . . report," § 19-3-304(1)(a) (emphasis added), to argue that the statute requires that the mandatory reporter complete a discrete act at a specific time — make a report immediately.  According to Gonzales, the crime is complete (and the statute is violated just once) when, upon receiving information that would cause the mandatory reporter to know or suspect child abuse, he fails to "immediately" report it.

¶ 30    For guidance in determining whether a crime is a continuing offense, we look to the Colorado Supreme Court's decision in *Allman,* ¶ 20, which held that identity theft by use was not a continuing offense.  Under section 18-5-902(1)(a), C.R.S. 2019, a person commits identify theft by use when he "'[k]nowingly uses the personal identifying information, financial identifying information, or financial device of another without permission,' with the intent to gain something of value."  *Allman,* ¶ 15 (citation omitted).  The court reasoned that each use of someone's personal information is a discrete act with its own new harm.  *Id.* at ¶ 18.

¶ 31    The court contrasted identity theft by use with identity theft by possession.  *Id.* at ¶ 19.  The court explained that "[i]dentity theft by

12

possession . . . is defined similarly to identity theft by use . . . except that it requires only the *possession* of another's identifying or financial information with the intent to use, rather than the actual *use* of that information." *Id.* The court reasoned that a "use" is "a discrete act that logically creates a unit of measurement," while a crime of possession is generally thought to be continuing because "there is not an inherently logical way to measure possession in units." *Id.* (citing *People v. Zuniga*, 80 P.3d 965, 969 (Colo. App. 2003)).

¶ 32 Like the division in *MacIntosh*, ¶ 28, we read *Allman* to mean that a criminal offense is not a continuing offense if it arises from "a discrete act that logically creates a unit of measurement." *Allman*, ¶ 19. But the *Allman* rubric does not readily apply here.

¶ 33 An affirmative act, like a "use" of someone else's personal identifying information, is easy to speak of in terms of "discrete acts" and "measurable units." There is a clear beginning and clear end to the act, and it is easy to distinguish one act from another because each new act causes a new "harm." *See id.* at ¶ 18 ("[E]ach act of putting another's information into service for varying purposes constitutes a separate, discrete act. This conclusion is

13

supported by the fact that each time an identity thief uses another's information, a new harm occurs.").

¶ 34     Because failure to report is a crime of omission, however, it is not easy to speak of in terms of "discrete acts" or "measurable units." True, by using the word "immediately" in section 19-3-304(1)(a), the General Assembly could have intended to criminalize a discrete omission — a single failure to report. And it could have intended that omission to have a measurable unit — the moment the mandatory reporter receives information causing him to know or suspect child abuse and willfully fails to "immediately" report it.

¶ 35     But because "immediately" is not defined in the statute, it is unclear to us what the "measurable unit" of the crime is. How many seconds, minutes, hours, or days must pass between the mandatory reporter's receipt of information from which he has cause to know or suspect child abuse and his report of that information for a violation of the statute to occur? Unfortunately, the dictionary definition of "immediately" — "without interval of time" or "in direct connection or relation," Merriam-Webster Dictionary, https://perma.cc/3B3T-JKYK — does not aid our

analysis.  Even applying this definition, it is unclear when the omission criminalized by the statute begins and ends.

¶ 36    More importantly, under Gonzales's interpretation, a mandatory reporter is essentially relieved of any continuing duty to report child abuse once he fails to immediately report it.  And there is the rub.  There is no dispute that the statute is violated upon a mandatory reporter's willful failure to make an "immediate" report of known or suspected child abuse.  What remains in dispute is whether there is an ongoing duty to report that continues beyond the immediate failure to report.  Although the General Assembly used the word "immediately" for a reason, *see Dep't of Transp. v. Stapleton*, 97 P.3d 938, 943 (Colo. 2004) ("[W]e presume that the General Assembly understands the legal import of the words it uses and does not use language idly, but rather intends that meaning should be given to each word."), it is not clear to us that the reason was to extinguish a mandatory reporter's duty to report after a passage of time.  It is equally reasonable, as the County Court argues, that the General Assembly used the word "immediately" simply to signify the importance of the duty and encourage the quick reporting of abuse.

15

¶ 37    Thus, it is reasonable to read the statute as creating an ongoing duty to report child abuse that is continuously violated so long as the mandatory reporter has cause to know or suspect child abuse and willfully fails to report it.  And it is also reasonable to read the statute as creating only a discrete obligation that is violated when a mandatory reporter willfully fails to make an immediate report upon receipt of information that would cause him to know or suspect child abuse.

¶ 38    Based on the plain language of the statute, we cannot determine whether the General Assembly "must assuredly have intended" to treat failure to report as a continuing offense.  *Toussie*, 397 U.S. at 115; *see Allman*, ¶ 12; *Thoro Prods. Co.*, 70 P.3d at 1193.  Because we conclude that the statute is ambiguous, we turn to other tools of statutory construction to guide our analysis.

### B.    Other Continuing Offenses

¶ 39    The parties refer us to case law addressing other crimes that have been deemed to be continuing offenses in Colorado and in other jurisdictions.  Unfortunately, these cases do not shed much light on whether the "nature" of the crime of failure to report as defined in section 19-3-304 is such that the General Assembly

16

"must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115.

¶ 40     In *People v. Johnson*, 2013 COA 122, a division of this court considered whether the crime of escape from custody was a continuing offense. Turning first to the statutory text, the division noted that "escape" was not defined as a continuing activity in the crime's elemental statute. *Id.* at ¶ 14; *see* § 18-8-208(1), C.R.S. 2019. But the division looked at the definition of "escape" in a related provision criminalizing aiding and abetting an escapee. *Johnson*, ¶ 18. Under that provision, an "escape" is "deemed to be a continuing activity commencing with the conception of the design to escape and continuing until the escapee is returned to custody or the attempt to escape is thwarted or abandoned." § 18-8-201(2). The division reasoned that it would be "illogical for the General Assembly to treat escape as a continuing offense in the context of aiding escape, but not to do so in the context of the substantive offense itself." *Johnson*, ¶ 20. Thus, reading these provisions together, the division concluded that the legislature must have intended for escape to be a continuing offense. *Id.* Therefore, although the crime of escape was not explicitly defined as a

17

continuing offense, the division was able to discern the General Assembly's clear intent to treat it as one by examining the overall statutory scheme. *See id.* at ¶ 8 ("[W]e read and consider the statute as a whole, interpreting it in a manner that gives consistent, harmonious, and sensible effect to all its parts."); *see also Allman,* ¶ 13 ("[W]e consider 'the statute as a whole, construing each provision consistently and in harmony with the overall statutory design.'" (quoting *Whitaker v. People,* 48 P.3d 555, 558 (Colo. 2002))).

¶ 41    Unlike in *Johnson,* no other related statutory provisions define, imply, suggest, or refer to the crime of failure to report as a continuing offense.

¶ 42    In *Perez,* a division of this court concluded that the crime of criminal impersonation could be a continuing offense or could occur at a specific time. 129 P.3d at 1092-93. To commit criminal impersonation, one must "knowingly . . . [a]ssume[] a false or fictitious identity." § 18-5-113(1)(a), C.R.S. 2019. Relying on the dictionary definition of "assume" as "to invest oneself with (a form, attribute, or aspect)," the division concluded that the plain language of the statute "implies that the offense of criminal impersonation

may occur over a period of time rather than at a specific moment." *Perez*, 129 P.3d at 1092-93 (quoting Webster's Third New International Dictionary 133 (1986)). Because the defendant impersonated the victim beginning as early as 1996 and continuing until 2003, the division concluded that the defendant's criminal impersonation was a continuing offense. *Id.* at 1093.

¶ 43 In *Zuniga*, a division of this court concluded that theft by receiving was a continuing offense. 80 P.3d at 969-70. Under the then-existing statute, a person committed theft by receiving when he "retain[ed] . . . anything of value of another, knowing or believing that said thing of value ha[d] been stolen, and when he intend[ed] to deprive the lawful owner permanently of the use or benefit of the thing of value." § 18-4-410(1), C.R.S. 2002. Noting that the operative word "retain" was not defined in the statute, the division turned to the dictionary, which defined "retain" to mean "to keep in possession or use." *Zuniga*, 80 P.3d at 969 (quoting Webster's Third New International Dictionary 1938 (1986)). Relying on this definition, the division reasoned that the legislature intended the theft by receiving statute to include the offense of possession of stolen property and explained that a "defendant necessarily

continues to commit any crime involving possession . . . during the entire period he or she possesses the property." *Id.*

¶ 44    Most recently, as explained above, the Colorado Supreme Court in *Allman* held that identity theft by use was not a continuing offense by contrasting it with the related crime of identity theft by possession. *Allman*, ¶¶ 19-20. The court explained that crimes of possession are generally thought to be continuing offenses. *Id.* (citing *Zuniga*, 80 P.3d at 969).

¶ 45    Unlike the crimes of escape from custody, criminal impersonation, theft by receiving, and identity theft by possession, section 19-3-304 does not criminalize an affirmative, ongoing act. Having cause to know or suspect child abuse triggers a mandatory reporter's obligation under 19-3-304(1)(a). But the crime is not possessing such information; the crime is failing to immediately report it. Failure to report is a crime of *omission*. In this way, the nature of the crime is markedly different from those discussed in *Johnson*, *Perez*, *Zuniga*, and *Allman*.

¶ 46    Still, a crime of omission may be a continuing offense when the statute imposes a duty that persists until a defendant performs. *See Wright v. Superior Court*, 936 P.2d 101, 103 (Cal. 1997)

20

("Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.") (citation omitted). So, the fact that the crime of failure to report is committed the moment an immediate report is not made does not end the analysis. *See Thoro Prods. Co.*, 70 P.3d at 1192 ("[I]n certain circumstances, a crime continues beyond the first moment when all its substantive elements are satisfied.").

¶ 47    In *People v. Lopez*, 140 P.3d 106, 109 (Colo. App. 2005), a division of this court determined that the failure to register as a sex offender — a crime of omission — is a continuing offense. The division concluded that offenders in Colorado are "under a continuing obligation to register." *Id.* That conclusion turned on the language of the statute itself, which explicitly imposed an ongoing obligation on the defendant to register quarterly and notify the authorities of any change in address. *Id.* Thus, the division concluded that, for failing to register as a sex offender, "[a] defendant does not commit the crime only at the particular moment the obligation arises, but every day it remains unsatisfied." *Id.* at

21

108-09 (quoting *State v. Goldberg*, 819 So. 2d 123, 129 (Ala. Crim. App. 2001)).

¶ 48    Failure to report under section 19-3-304, like the failure to register as a sex offender, is a crime of omission that is committed when a defendant breaches a statutory duty to act.  Unlike the sex offender registration statute, however, section 19-3-304 does not contain an explicit, ongoing, periodic reporting obligation.

¶ 49    The County Court relies on *Lebo v. State*, 977 N.E.2d 1031, 1037 (Ind. Ct. App. 2012), where the Indiana Court of Appeals concluded that violation of Indiana's mandatory reporter statute constituted a continuing offense for the purposes of the statute of limitations.  Like section 19-3-304, the Indiana statute requires that mandatory reporters who have reason to believe a child is abused or neglected "shall immediately make an oral or written report."  Ind. Code §§ 31-33-5-1, 31-33-5-4 (2020).  However, the Indiana statute also includes the following provision: "This chapter does not relieve an individual of the obligation to report on the individual's own behalf, unless a report has already been made to the best of the individual's belief."  Ind. Code § 31-33-5-3 (2020).

¶ 50    Based on the language of the statute, the Indiana court reasoned that "[a]n individual who has not been 'relieved' of his duty to report must be considered to have a continuing duty to do so." *Lebo*, 977 N.E.2d at 1037.  According to the court, a contrary reading would frustrate the purpose of the statute and would allow a mandatory reporter to avoid prosecution if the individual's failure to report was not discovered until after the statute of limitations had elapsed.  *Id.*

¶ 51    While Indiana's mandatory reporter statute is similar to section 19-3-304 in that they both require the immediate reporting of child abuse, section 19-3-304 contains no language explaining how long the duty to report lasts (e.g., unless a report has already been made).

¶ 52    The County Court also cites *State v. Kaiser*, 139 S.W.3d 545, 555 (Mo. Ct. App. 2004), where the Missouri Court of Appeals held that the offense of failure to report elder abuse under Missouri law was a continuing offense.  The court reasoned that

> failure to report elderly abuse is a crime of omission and, as such, is a continuing crime that is not complete at the time of the initial failure to report, but rather continues so long as the duty to report exists.  If we adopted [the

> defendant's] line of reasoning, it would mean the law imposed no duty on a caretaker to report abuse after they first knew of the abuse and then failed to report it. To the contrary, we think the duty to report must continue at least so long as the report of abuse may operate to ameliorate the circumstances of either the victim or another similarly-situated senior citizen, or to bring the abuser to justice.

*Id.*

¶ 53 *Kaiser* is not instructive here because the court did not apply the continuing offense analysis articulated in *Toussie* and adopted by the Colorado Supreme Court in *Thoro Products.* Instead, the Missouri court simply concluded that because elder abuse was a crime of omission, it was necessarily a continuing offense. But not all crimes of omission are continuing offenses. *See, e.g., Toussie,* 397 U.S. at 120-23 (concluding that the failure to register for the draft, a crime of omission, was not a continuing offense); *State v. Taylor,* 349 P.3d 696, 701-02 (Utah 2015) (concluding that securities fraud statute that prohibited "mak[ing] any untrue statement [or] . . . omit[ing] to state a material fact" described discrete acts that did not constitute continuing offenses (quoting Utah Code Ann. § 61-1-1 (West 2020))).

24

¶ 54    Finally, the County Court cites *United States v. Canal Barge Co.*, 631 F.3d 347, 351-54 (6th Cir. 2011), where the Sixth Circuit held that the duty to "immediately" notify the coast guard of a hazardous condition was a continuing offense for venue purposes. There, a barge carrying benzene was travelling down a river when it began to leak. *Id.* at 350. Rather than immediately report the condition, defendants placed a patch over the leak that held for several days. *Id.* However, further down the river, the patch failed, and a report was made. *Id.* The question before the court was whether the duty to report continued such that venue was proper in both the district where the immediate failure to report occurred and the district where the leak was ultimately reported. The court reasoned that "the 'immediate' start of the obligation does not mean that the obligation ceases as soon as there has been some delay in reporting." *Id.* at 352.

¶ 55    However, "the 'continuing offense' analysis for venue purposes is 'obviously different' from the 'continuing offense' analysis for statute of limitations." *United States v. Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004) (citation omitted). An offense may continue in different geographic locations for venue purposes without

25

qualifying as a continuing offense for statute of limitations purposes. *Id.* Indeed, the *Canal* court recognized this important distinction, noting that

> [i]f the crime is deemed to be a continuing offense for venue purposes, the defendant is merely exposed to prosecution in a different district. But if the crime is a continuing offense for statute of limitations purposes, the defendant may be prosecuted after a time at which he would otherwise have no exposure whatsoever. Thus, interpreting a crime as a continuing offense for statute of limitations purposes has more serious consequences than it does in the context of venue.

*Canal Barge Co.*, 631 F.3d at 353.

¶ 56    In the end, we do not find these cases particularly persuasive. Failure to report is a crime of omission that is unlike that of other crimes that have been found to be continuing offenses in Colorado, and the language of section 19-3-304 is unlike other statutes establishing crimes of omission as continuing offenses.

C.    Legislative History and Declaration of Purpose

¶ 57    The parties do not cite, and our own research has not revealed, relevant legislative history compelling us to conclude, one way or the other, whether failure to report is a continuing offense. Examining the statute's declaration of purpose is equally unhelpful.

26

¶ 58    The County Court argues that the legislative declaration accompanying the Child Protection Act (the Act) establishes that the failure to report child abuse is a continuing offense.  The legislative declaration states:

> The general assembly declares that the *complete reporting* of child abuse is a matter of public concern and that, in enacting this part 3, it is the intent of the general assembly to protect the best interests of children of this state and to offer protective services in order to *prevent any further harm* to a child suffering from abuse.

§ 19-3-302, C.R.S. 2019 (emphasis added).

¶ 59    The County Court argues that the only way to ensure the "complete reporting of child abuse" is to impose a continuing duty on mandatory reporters to report abuse.  It asserts that if the reporting obligation expires instantaneously after the failure to make an immediate report, it would frustrate the General Assembly's intent to "prevent any further harm" to children.  Thus, to achieve the declared purpose of the statute, the General Assembly must have intended for failure to report to be a continuing crime.

27

¶ 60    We agree that the state has a compelling interest in protecting children and ending child abuse that is furthered by requiring mandatory reporters to promptly report known or suspected abuse. And we agree that this purpose is frustrated when a mandatory reporter who fails to fulfil his statutory obligation escapes liability by staying silent until the limitations period expires.

¶ 61    But we also note that the legislative declaration was enacted in 1975 as part of a comprehensive reform of the Act designed to more effectively prevent and address child abuse.  Ch. 177, sec. 1, §§ 19-10-101 to -115, 1975 Colo. Sess. Laws 645-55.  And section 19-3-302 still serves as the legislative declaration for the entire Act, which includes provisions addressing, among other things, emergency placement of abandoned children, evidence gathering during investigations of child abuse or neglect, recorded interviews of children concerning reports of abuse, assessments by county departments of human or social services, establishment and participation in safety plans, and creation of a differential response program for low- or moderate-risk abuse or neglect.  Nothing in the legislative declaration addresses whether section 19-3-304 creates a continuing duty or whether failure to report is a continuing offense.

Rather, the legislative declaration speaks to a much broader intent of the General Assembly in enacting the whole of the Act.

¶ 62   As to the failure to report statute itself, the parties did not cite, and we could not find, legislative history speaking to how long a mandatory reporter's duty to report persists. The amendments to the statute also reveal very little in this regard.

¶ 63   Before 1975, a mandatory reporter who had "reasonable cause to believe that a child has been subject to abuse" was required to "report such incident or cause a report to be made to the proper law enforcement agency." § 19-10-102, C.R.S. 1973. The word "immediately" was added to the statute in 1975, requiring mandatory reporters "who [have] reasonable cause to know or suspect" child abuse or neglect to "*immediately* report or cause a report to be made." § 19-10-104, C.R.S. 1975 (emphasis added).

¶ 64   There is no indication in the legislative history that the General Assembly intended the word "immediately" to affect the duration of a mandatory reporter's reporting obligation. Rather, it appears to have been added as part of the Act's overarching goal to encourage the expeditious reporting and investigation of child abuse. Indeed, the word "immediately" was included in several

other provisions of the Act at the same time. *See* § 19-10-105, C.R.S. 1975 (requiring any person to immediately report the death of a child from known or suspected abuse or neglect); § 19-10-106, C.R.S. 1975 (requiring that x-rays evidencing abuse be forwarded immediately to the receiving agency); § 19-10-108(3), C.R.S. 1975 (requiring a receiving agency to immediately transmit a report of known or suspected abuse to the district attorney and local law enforcement); § 19-10-109, C.R.S. 1975 (requiring a receiving agency to immediately investigate reports of known or suspected abuse or neglect).

¶ 65    Since 1975, the reporting statute has been amended several times, most notably in 2002 when the General Assembly amended the statute to add the language ("upon receiving such information") that now appears after the word "immediately." Ch. 177, sec. 2, § 19-3-304, 2002 Colo. Sess. Laws 568-69. While this amendment further clarified the timeframe for when a report must be made, there is no indication that the General Assembly intended to alter the scope or duration of the reporting obligation.

¶ 66    Ultimately, neither the legislative declaration of the Act nor the legislative history of the reporting statute helps us determine whether failure to report is a continuing offense.

### D.    Consequences of the County Court's Construction

¶ 67    Finally, the County Court argues that allowing a mandatory reporter who stays silent for eighteen months to escape penalty for his failure to report leads to an absurd result that subverts the purpose of the statute to protect children from further abuse.  But adopting the County Court's reasoning would allow for an indefinite delay in triggering the limitations period.  It could lead to circumstances where a mandatory reporter would be subject to prosecution decades after his initial failure to make an immediate report.  This would put failure to report, a class 3 misdemeanor, in a similar category to felonies such as murder and kidnapping that have no time limit for commencing prosecution.  *See* § 16-5-401(1)(a), C.R.S. 2019 (listing the statute of limitations for offenses, including those with no limitations period).

¶ 68    "While there is a risk that an offender will conceal his misdeeds in the hopes of avoiding prosecution, this is no less a risk here than it would be in every criminal case in which a statute of

31

limitations exists." *Thoro Prods. Co.*, 70 P.3d at 1195. And in the absence of clear and contrary direction from the General Assembly, in our view, the County Court's construction leads to the more absurd result.

### E. Failure to Report is Not a Continuing Offense

¶ 69 As discussed, criminal statutes of limitation are to be liberally interpreted in favor of defendants. *Toussie*, 397 U.S. at 115. Because there is a tension between the purpose of a statute of limitations and the continuing offense doctrine, the doctrine should be applied in limited circumstances. *Thoro Prods. Co.*, 70 P.3d at 1193. Indeed, "[t]here is a presumption against a crime being a continuing offense." *Perez*, 129 P.3d at 1092. To overcome the presumption, we must find that the General Assembly "assuredly," *Toussie*, 397 U.S. at 115, "manifestly," *Thoro Prods. Co.*, 70 P.3d at 1192, or "unmistakably," *People v. McMinn*, 2013 COA 94, ¶ 29 (citation omitted), intended that the crime be treated as a continuing one.

¶ 70 In addition, criminal law must be sufficiently clear so that a person will know what the law forbids. *Thoro Prods. Co.*, 70 P.3d at 1198. "For this reason, ambiguity in the meaning of a criminal

statute must be interpreted in favor of the defendant under the rule of lenity." *Id.* The rule of lenity is a rule of last resort. While it should not apply to defeat the evident intent of the General Assembly, it should apply if, after utilizing various aids of statutory construction, the General Assembly's intent remains obscured. *Id.* (first citing *Muscarello v. United States*, 524 U.S. 125, 138 (1998); then citing *United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993)).

¶ 71 We are not persuaded that the plain language of section 19-3-304 or the interpretive aids we have examined demonstrate that the General Assembly assuredly intended that failure to report be a continuing offense. We cannot say that the broad legislative declaration of the Act or the generic legislative history of the reporting statute itself requires us to find that the duty to report is ongoing or that the failure to report is a continuing offense.

¶ 72 "We do not mean that the argument in support of implying a continuing offense in this case is insubstantial, but it is at best highly equivocal." *Toussie*, 397 U.S. at 122. Like the Court in *Toussie*, we are faced with the task of construing an ambiguous statute in one of two ways for purposes of the statute of limitations.

One construction would limit prosecution to a period of eighteen months following a failure to immediately report, while the other could indefinitely extend when the statute of limitations begins to run.

> "[W]hen [a] choice has to be made between two readings of what conduct [the General Assembly] has made a crime, it is appropriate, before we choose the harsher alternative, to require that [the General Assembly] should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication."

*Id.* (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952)).

¶ 73 We also do not mean to imply that the crime of failure to report child abuse or neglect is not a serious offense or that it is victimless. The duty to report is a vital tool in preventing and stopping serious harm to vulnerable victims. And compliance is easy. All the mandatory reporter must do is pass along information to the county department of human services, the local law enforcement agency, or the child abuse reporting hotline.

¶ 74    Nonetheless, we conclude that failure to report is not a continuing offense.[2]  The limitations period for this misdemeanor begins when all the substantive elements of section 19-3-304(4) are satisfied; that is, it begins to run when a mandatory reporter willfully fails to make an immediate report after receiving information that gives him reasonable cause to know or suspect that a child has been subjected to abuse or neglect.

---

[2] Our conclusion is buttressed by a subsequent amendment to the statute that created a three-year statute of limitations period specific to the crime of failure to report "unlawful sexual behavior." § 19-3-304(5); *see supra* note 1.  Although we cannot infer the intent of an earlier General Assembly by reviewing a subsequent amendment to a statute, *see State v. Nieto*, 993 P.2d 493, 503 n.6 (Colo. 2000), it is notable that the General Assembly, through the 2019 amendment, created a longer statute of limitations for failing to report one category of child abuse but did not clarify that the crime of failure to report is a continuing offense.  On the contrary, in support of extending the statute of limitations, the bill sponsor argued that, under the then-existing statute of limitations, mandatory reporters who fail to report for eighteen months and one day "are having their cases dismissed" and "are absolved of any responsibility."  Hearing on S.B. 19-049 before the S. Judiciary Comm., 72d Gen. Assemb., 1st Sess. (Feb. 6, 2019).  These statements suggest a common understanding that failure to report is not a continuing offense; if it were, a mandatory reporter would not escape liability by remaining silent for the limitations period.

## IV.  Conclusion

¶ 75    Gonzales was accused of failing to report C.V.'s alleged abuse beginning in April 2013.  The eighteen-month limitations period expired in October 2014, more than three years before Gonzales was indicted.  Accordingly, we agree with the district court that the County Court abused its discretion by ruling that the statute of limitations did not prevent Gonzales from being prosecuted in 2018 for a 2013 failure to report in violation of section 19-3-304.

¶ 76    The district court's order is affirmed.

JUDGE FOX and JUDGE NAVARRO concur.